Roberto MARTINEZ RODRIGUEZ et al., Plaintiffs,

v.

Irving JIMENEZ and Pedro J. Rodriguez Fortier, Defendants.

No. 76–1166.

United States Court of Appeals, First Circuit.

Submitted May 27, 1976.

Decided June 3, 1976.

Miriam Naveira de Rodon, Sol. Gen., and Candita R. Orlandi, Asst. Sol. Gen., San Juan, P. R., on application for stay pending appeal.

Francisco Lopez Romo, Santurce, P. R., Rafael Perez-Bachs, Roberto Buso Aboy, and Stanley L. Feldstein, San Juan, P. R., on memorandum in opposition thereto.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

PER CURIAM.

The defendant appellants in this action have requested a stay of portions of a district court order concerning the administration of the San Juan District Jail, also known as "La Princesa". Plaintiffs-appellees, the class of inmates at the institution, brought suit in the U.S. District Court for the District of Puerto Rico alleging that La Princesa was operated in violation of the Fourteenth Amendment to the Constitu-

tion. After a hearing on the merits, the district court entered a twenty paragraph order concerning the administration of La Princesa, and further ordered that the defendants cease using the Jail as a correctional institution from and after August 1, 1976. Defendant appellants have petitioned this court for a stay of nine paragraphs of the twenty paragraph order.[1]

The applicable standards for a party seeking a stay of an injunctive order pending appeal are (1) a strong showing that he is likely to succeed on the merits of the appeal; (2) a showing that unless a stay is granted he will suffer irreparable injury; (3) a showing that no substantial harm will come to other interested parties, and (4) a showing that a stay will do no harm to the public interest. *Reserve Mining Co. v. United States,* 498 F.2d 1073, 1076–77 (8th Cir. 1974). *Virginia Petroleum Jobbers Ass'n. v. FPC,* 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). The district court considered these four criteria in denying the stay below, and we see no reason to disturb its judgment.

We have no difficulty in finding that the appellants have failed to show a probability of success on the merits as to liability.[2] The case law amply supports the district court's conclusion that the conditions at La Princesa constituted violations of the Fourteenth Amendment. *See, e. g., Inmates of Suffolk County Jail v. Eisenstadt,* 360 F.Supp. 676 (D.Mass.1973).

The other ground of attack on the merits is whether the order was within the district court's discretion in remedying a violation of the Constitution. In the absence of clear, countervailing appellate court precedent, or statutory proscription, a showing of probability of success on the part of the appellants is difficult, if not impossible, to achieve. They have not done so here. Although some of the contested paragraphs

impose rigid requirements upon the administration of the prison, we cannot say that the district court, with its superior knowledge of local conditions, has clearly abused its discretion in formulating its remedy.

Passing beyond the merits of the parties on appeal, we agree with the district court that the defendants have failed to demonstrate irreparable harm during the pendency of this appeal that would substantially outweigh the injury to the plaintiffs. The Commonwealth essentially relies upon two broad claims of injury: (1) disruption of the prison system and (2) the limited nature of the government's financial resources. We will address the circumstances of each paragraph of the order separately.

Paragraph 4 of the district court's order limits the population of La Princesa to 250 inmates. The government claims that the reduction in population had to be achieved in a hasty and unscientific manner and has caused disruption in the other penal institutions in the Commonwealth. They further claim that an emergency capacity level should be set so as to accommodate sharp increases in prisoner population following large scale police raids. These claims of injury, however, were unaccompanied by any factual information—except one generalized reference to a riot at the Young Adult Institution at Miramar—upon which this court could evaluate the need for increased capacity at La Princesa on either an ongoing or temporary basis. These conclusory allegations of harm then are insufficient to outweigh the need to reduce population to improve the conditions of confinement at La Princesa.

Paragraphs 1 through 3 order that no youth between the ages of 18 and 21, no drug addict, and no person who is mentally deranged be confined at La Princesa. The government's claim of injury is directed at the difficulty of ascertaining which prison-

---

1. Pursuant to F.R.A.P. 8(a) the appellants first addressed their request to the district court. That court denied their petition, and upon further request, issued a statement of reasons for the denial. *See* F.R.A.P. 8(a).

2. The one exception may be the finding of fact that the administration unconstitutionally denied access to the prison library. This finding may be unsupported by the evidence and, hence, clearly erroneous. We can make this determination only with the entire record before us.

ers, presented for admission, fall within those categories. It also contends that the Commonwealth courts would hold prison officials in contempt for failure to admit those committed there by the courts. The claims of injury are supported by statements that the prison officials must rely on the information volunteered by the individual prisoner, and that, in some unknown number of cases, this information was erroneous. The district court's statement that these provisions were designed to exclude from La Princesa those prisoners most likely to be harmed by the conditions of confinement there must be balanced against the problems of administration these provisions may generate. We confess to some skepticism that reasonable, even routine, communication between prison authorities and personnel from committing institutions should not, in most cases, supply the requisite information. In the absence of any documentation of the failure of reasonable administrative techniques to screen incoming inmates, we cannot say that these provisions of the district court's order should be modified pending appeal.

Paragraphs 13, 14 and 17 deal with the provision of medical services to the inmates. The government claims that it does not have adequate funds to pay for such services.[3] Against this cost, the interests of the plaintiffs in adequate medical care while incarcerated must be deemed superior. Furthermore, the Commonwealth has failed to demonstrate that the provisions of the district court's order are wasteful or unduly burdensome. Paragraph 13 requires each prisoner to have a medical examination within 24 hours of incarceration. Government assertions that a longer period would screen out inmates soon to be released under bail have not been substantiated by statistics. The district court considers the medical examination necessary to enforce the exclusion of drug addicts and the mentally deranged pursuant to paragraphs 2 and 3. In such circumstances, we cannot find the requirement of medical examinations to be unduly onerous.

Paragraph 14 requires that each prisoner have access to a "medical officer" upon request, at least once a day. Paragraph 17 requires that a medical doctor visit the clinic once a day if inmates confined there are unable to move to the doctor's consultation room. These appear to be sound orders for institutional medical care.[4]

■ Paragraph 18 of the district court's order requires the jail administration to provide rooms for private attorney-inmate conferences. Appellants claim that they have been forced to utilize the offices of jail officials for this purpose, thus disrupting the administration of the prison. While recognizing that this paragraph places some burden on the administration, we must agree with the district court's reasoning that absolute privacy between a pre-trial detainee and his counsel is a right which requires immediate vindication. Accordingly, a stay of this paragraph is not appropriate.

Stay as to paragraph 9 and the plaintiffs' attorneys' visitation rights is denied as frivolous.

We recognize that the order of the district court concerns the administration of La Princesa until August 1, 1976. During those two months, events may render compliance with the order impossible despite good faith efforts by the defendants. In those circumstances, the district court will be open to a factual presentation of the administration's needs and a request for modification of the decree.

*Stay is denied.*

3. The Commonwealth asserts that the funds needed to satisfy the paragraph concerning medical care would be $60,000. As the plaintiffs point out, this amounts to $652 per day. This figure appears inflated.

4. The defendants claim that paragraph 14 requires that a prisoner be seen by a doctor once a day upon request. On the contrary, the district court used the term "medical officer" in that paragraph. We construe that term to mean paramedic personnel such as nurses. So interpreted, the district court's order merely institutes the type of medical treatment familiar to those who have experience in the armed forces, institutions of higher education, summer camps or large corporations.