**Rochelle DAVIS, P.P.A., Luther Davis and Luther Davis**

v.

**Robert CASEY, Rita Feeney, Arlene Libon, Donald Bowdoin, and Alexander Sharp.**

Civ. A. No. CA78-1029-Z.

United States District Court, D. Massachusetts.

July 2, 1980.

Andrew C. Meyer, Jr., Boston, Mass., for plaintiff.

Bowdoin and Sharp, Francis G. Chase, Asst. Atty. Gen., Boston, Mass., Casey Feeney and Libon, Joseph I. Sousa, Asst. City Sol., Brockton, Mass., for defendant.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff Luther Davis brings this action under 42 U.S.C. § 1983 to recover for injuries to his daughter Rochelle Davis ("Rochelle"), a minor, resulting from continued physical abuse at home. Luther Davis claims on his own behalf and on Rochelle's behalf against various state and city employees—Rochelle's school teacher, a school principal, a school nurse, and two administrators of the Massachusetts Department of Public Welfare (DPW)—charging that they negligently failed to prevent Rochelle's abuse while she was in parental custody. The case is before me on defendants' motions for summary judgment.[1]

It is undisputed that in 1976 Rochelle was eight years old and was enrolled at the Downey Community School, Brockton, Massachusetts. Defendants suggest that she lived with her adoptive parents, including plaintiff Luther Davis. In his complaint, Luther Davis alleges that throughout the fall of 1976, his daughter would appear at school with "multiple bruises, abrasions and contusions . . . apparent in conspicuous places on [her] body." Complaint, Count I, ¶ 8. He describes these conspicuous wounds as evidence of "serious physical injury" visited upon Rochelle at home, which caused "severe and permanent injuries" including "brain damage rendering her comatose, quadriplegic, and severely retarded". Complaint, Count I, ¶ 11. Because, the complaint alleges, defendants had opportunity to witness Rochelle's injuries, but did not intervene, Luther Davis claims that "[h]e has been deprived of the enjoyment of his daughter's childhood and youth, and her society, companionship and affection . . .", Complaint, Count XI, ¶ 8, and that Rochelle has been deprived of "the right . . . to be protected from harm." *Plaintiff's Brief in Opposition to Defendants' . . . Motion for Summary Judgment*, at 9.[2]

1. The motions for summary judgment, insofar as they raise issues entirely within the pleadings, are treated as motions for judgment on the pleadings. See Rule 12(b), Fed.R.Civ.P.

2. The allegations can be summarized as follows: that Rochelle was deprived of her "right . . . to be protected from harm", *Plaintiff's Brief in Opposition to Defendants' . . . Motion for Summary Judgment*, at 9, (citation omitted), because defendant DPW administrators, "by [their] servants, agents or employees [were] notified" of, Counts VIII and IX, at ¶ 5; and defendant school employees "had reasona-

■ To state a claim under 42 U.S.C. § 1983, and thus survive the motion for summary judgment, the complaint must allege conduct under color of state law which subjects the plaintiffs or causes them to be subjected, to "the deprivation of any rights, privileges or immunities secured by the Constitution and laws." On defendants' motion for summary judgment, I confront the question whether, taking all allegations in the complaint to be true, the conduct of these defendants can be said to have deprived Rochelle or Luther Davis of protected liberties within the meaning of the Fourteenth Amendment. I determine that it cannot.

The claim in this case arises from two provisions of Mass.Gen.Laws ch. 119, a statute which requires certain public employees to act on their suspicion or knowledge of child abuse. § 51A requires the filing of a report with the Department of Public Welfare (DPW) when "any . . . nurse, public or private school teacher, [or] educational administrator . . . in his professional capacity shall have reason to believe that a child under the age of eighteen years is suffering serious physical or emotional injury . . .". § 51B requires DPW to "investigate and evaluate [in a written statement] the information reported under [§ 51A]". Plaintiff's claim can be simply stated: that school employees breached a duty created by § 51A, and DPW administrators breached a duty created by § 51B, and are thus liable under 42 U.S.C. § 1983 for damages which resulted

from Rochelle's abuse at the hands of an unidentified individual.

It is essential to note at the outset that this § 1983 claim does not arise from any action taken directly by the named defendants. Plaintiff concedes that Rochelle was abused—and not by the defendants—while in parental custody. The claim thus arises from a suggested duty of defendant public employees to prevent a third party from endangering Rochelle's physical well-being and, as part of that proposed duty, to take steps to ameliorate observed injuries. The claim raises an important issue: under what circumstances can § 1983 liability arise from *indirect* public involvement in tortious conduct of a private individual?

■ In tracing the limits of official liability under § 1983 for the acts performed by third persons, the courts have identified a number of boundaries.[3] Two are of critical importance to the instant case: supervisory liability of a public official under § 1983 is limited to instances in which an *agent* of the named supervisor commits the wrong, *Martinez v. State of California,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980), and, additionally, to instances in which the official has a "personal role" in the agent's misconduct. *Maiorana v. MacDonald,* 596 F.2d 1072, 1077 (1st Cir. 1979), *Kostka v. Hogg,* 560 F.2d 37, 40 (1st Cir. 1977). See *Rizzo v. Goode,* 423 U.S. 362, 376, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976) and *Furtado v. Bishop,* 604 F.2d 80, 89 (1st Cir.), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980).[4]

---

ble cause to believe" (Counts I, ¶ 9; Counts III and V, ¶ 6), "had the opportunity to observe" (Counts I, ¶ 9, Counts III and V, ¶ 6), and "knew or should have known" of (Count III, ¶ 3; Counts IV, VI, XII and XIII, ¶ 5) Rochelle's injuries, and consequently of her ordeal at home, and failed to intervene to protect her from further injury.

**3.** I determine in this order that the failure of the complaint to state a claim for which relief can be granted provides a sufficient independent basis for the allowance of summary judgment. Accordingly, I do not address an additional requirement of a complaint under § 1983, about the existence of which I have serious doubt: that the alleged public conduct deprive plaintiffs of rights secured by the Constitution.

Whether plaintiff's asserted "right . . . to be protected [by the state] from harm [inflicted by third persons]" has a constitutional basis is doubtful, and plaintiff has included nothing in his memorandum to suggest otherwise.

**4.** *DiMarzo v. Cahill,* 575 F.2d 15 (1st Cir.), *cert. denied, sub nom., Hall v. DiMarzo,* 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978), affirming § 1983 liability of defendant Massachusetts Commissioner of Corrections for his "pervasive failure . . . to maintain [a county jail] in conformity with constitutional requisites", 575 F.2d at 18, is not inconsistent. In *DiMarzo,* the supervisor's personal role was not affirmative—rather it was a failure to staff, maintain and manage a public facility in conformity with

In a recent decision, *Martinez v. State of Cal.,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the United States Supreme Court affirmed the State's demurrer to a § 1983 claim in which affirmative state action—the parole release of a "mentally disordered sex offender not amenable to treatment", *Martinez v. State of Cal.,* 85 Cal.App.3d 430, 149 Cal.Rptr. 519, 522 (1978) *aff'd.,* 100 S.Ct. 553, 99 S.Ct. 2403, 60 L.Ed.2d 1064 (1980), who subsequently committed murder, was held insufficient to constitute a deprivation of rights in a § 1983 claim by the murder victim's father. *Martinez* reaffirmed a principle of law echoed throughout claims under § 1983: that, to support a claim under § 1983 against a public official, alleged violations must arise from the defendant public official's personal involvement in the wrong. *Id.* 100 S.Ct. at 559; *Rizzo v. Goode,* 423 U.S. 362, 376–7, 96 S.Ct. 598, 606–607, 46 L.Ed.2d 561 (1976); *Maiorana v. MacDonald, supra.* In *Martinez,* on facts closely analogous to those of the instant case plaintiff alleged that the action of parole release, because it was conduct without which a complained-of murder by a private citizen presumably could not have taken place, was actionable under § 1983. Because the murder was not committed by a state official, however, rather by a private citizen, and because the private citizen "was in no sense an agent of the parole board", *id.,* 100 S.Ct. at 559, the Court determined that the subject "death [was] too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law". *Id.*[5]

■ The complaint does not allege that the named defendants abused Rochelle—nor that affirmative state action played any part in her ordeal. The complaint does not allege that Rochelle's attacker was employed or supervised by—or even known to—the defendants. Accordingly, it fails to state a claim for which relief can be granted, and the motions of all defendants for summary judgment are allowed.

affirmative statutory duties. The court premised its determination of liability upon the finding that the supervisor had both knowledge of constitutional deprivations and statutory responsibility for directing the conduct of the offending agents, 575 F.2d at 17. In short, although § 1983 liability of a supervisor does not require *affirmative* conduct, it can only arise from the affirmative misconduct of agents of the supervisor, in which the supervisor has a *personal* role.

5. The fact that plaintiff in this case might at trial show that certain of the defendants failed *to perform or insufficiently performed duties* created by state statute does not, of itself, create liability under 42 U.S.C. § 1983, even if such conduct would provide a basis for recovery in a tort action under Massachusetts law, *Martinez v. California, supra,* 100 S.Ct. at 559; *see also Kostka v. Hogg,* 560 F.2d 37, 40 n.2 (1st Cir. 1977), and even if it were the proximate cause of Rochelle's abuse, *id.*