Gary LEE, et al., Plaintiffs,

v.

STATE of Oregon, et al., Defendants.

Civ. No. 94–6467–HO.

United States District Court,
D. Oregon.

Aug. 3, 1995.

Thomas O. Alderman, Eugene, OR, Rich-
ard Coleson, Bop, Coleson & Bostrom, Terre
Haute, IN, for plaintiffs.

John A. Wittmayer, Thomas M. Christ,
Mitchell Lang & Smith, Charles F. Hinkle,
Stoel & Rives, Eli Duane Stutsman, Port-
land, OR, for intervenor.

Theodore R. Kulongoski, Thomas A. Balmer and Stephen K. Bushong, Dept. of Justice, Salem, OR, for defendants.

## OPINION

HOGAN, Chief Judge.

The court must decide the status of parties to assert or defend claims in this action. Plaintiffs are two physicians, four terminally ill or potentially terminally ill patients, a residential care facility, and individual operators of residential care facilities. Defendants include the state of Oregon, the Attorney General for the State of Oregon, a district attorney, members of the Oregon Board of Medical Examiners, Oregon Health Sciences University Hospital (OHSU), and members of the Oregon State Board of Higher Education (collectively state defendants). In addition, this court allowed an Oregon physician and sponsors of Measure 16 to intervene as defendants.

The parties filed other motions relating to standing, intervention, immunity, and adding parties through pleading amendment which are addressed by this opinion and decided by separate order on this date.

## I. STANDING

■ Defendants argue that plaintiffs lack standing to assert their claims. Article III of the United States Constitution limits the judicial power of federal courts to "cases" and "controversies." U.S. Const., art. III. A party who invokes the court's authority must show that: (1) they have suffered an "injury in fact" or an invasion of a legally-protected interest which is concrete and particularized, and "actual or imminent," (2) there is a causal connection between the injury and the challenged conduct, and (3) it must be likely that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

■ Standing distinguishes "a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem." *See United States v. SCRAP*, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417, 37 L.Ed.2d 254 (1973). It is not to be placed in the hands of "concerned bystanders," to use simply as a "vehicle for the vindication of value interests." *Id.* However, it is not necessary to demonstrate a specific or immediate harm when challenging the constitutionality of a statute on its face. *Kines v. Day*, 754 F.2d 28, 30 (1st Cir.1985) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1120–21, 14 L.Ed.2d 22 (1965)). In some cases, the potential injury may be so severe, i.e., death, that the risk of it occurring at some future time may be sufficient for standing purposes. *Dimarzo v. Cahill*, 575 F.2d 15, 18 (1st Cir.1978), *cert. denied*, 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978). "One need not wait for the [life-threatening event to occur] before concluding that a real and present threat exists." *Id.* This rule applies when a plaintiff has little control over whether the life-threatening event will occur. *Id.*

■ A person may have standing to assert a facial challenge to the constitutionality of a statute which has not yet gone into effect. *See Hodel v. Virginia Surface Min. & Reclam. Ass'n*, 452 U.S. 264, 298, 101 S.Ct. 2352, 2371–72, 69 L.Ed.2d 1 (1981); *see also Doulin v. White*, 549 F.Supp. 152, 154 (E.D.Ark.1982) (citing *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). There is no precise test for determining the difference between an abstract question and an Article III controversy, rather it is necessarily a question of degree. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959–60, 22 L.Ed.2d 113 (1969). The answer also depends on the nature of the constitutional issues and whether *ad hoc* factual inquiries are necessary. *See, e.g., Hodel*, 452 U.S. at 294–95, 101 S.Ct. at 2369–70.

■ Courts have found an insufficient connection between an alleged injury and a defendant's future conduct where it is unlikely that a plaintiff could ever be threatened by such conduct. *Golden v. Zwickler*, 394 U.S. 103, 109, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983). A plaintiff does not lack standing merely because an injury may be an indirect product of a defendant's conduct. *See Allen v. Wright*, 468 U.S. 737, 757–58, 104 S.Ct. 3315, 3327–28, 82 L.Ed.2d 556 (1984).

■ While standing should not depend upon a consideration of the merits of a plaintiff's claim, such a consideration may properly form one basis for a finding that standing is necessary or desirable to advance the constitutional policies at issue. *Frissell v. Rizzo*, 597 F.2d 840, 845 (3rd Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). Where the injury is less tangible than actual physical or financial injury, a standing determination may turn on the court's view of the "sensitivity of the constitutional values in dispute." *Id.*

The court is required to base its decisions concerning the medical conditions of potential parties only on the record presented to it. This applies equally to plaintiffs and the proposed intervening defendants. The record reviewed here includes all of those documents received prior to the hearing on dispositive motions, as well as post-hearing submissions. This may seem insensitive because the medical conditions of these people may have improved or deteriorated between the final submissions to the court and now. The court, however, may not consider any changes that are not reflected in the written record.

■ The state and intervenor defendants argue that plaintiff terminally ill patients lack standing because they have not demonstrated an actual or imminent injury which is fairly traceable to their conduct. However, the risk of death is a sufficient injury for plaintiffs Eric Dutson and Janice Elsner and properly a basis for standing if sufficiently connected to Measure 16. *See Dimarzo v. Cahill, supra.* Measure 16 requires that a qualified person have an "incurable and irreversible disease that has been medically confirmed and will, within reasonable medical judgment, produce death within six (6) months." (§ 1.01(12)).

■ Plaintiff Dutson is an AIDs patient who has been given a prognosis of six months to live. (Plaintiffs' Supplemental Statement of Material Facts (# 174)). Plaintiff Elsner has a progressive form of muscular dystrophy and has already lived longer than doctors expected. *Id.* She has suffered clinical depression that resulted in ambivalence about whether she wanted to continue living. (Defendants' Supplemental Statement of Material Facts (# 164)). Both of these individuals have histories of depression. *Id.* Currently, they are not contemplating suicide and have expressed opposition to assisted suicide to their physicians. However, their medical histories indicate they are likely to become depressed and unable to control the timing or severity of that depression.[1] There is sufficient evidence that plaintiffs Dutson and Elsner are at a significant risk of harm due to circumstances beyond their control with Measure 16 in effect. These plaintiffs have standing to assert a facial challenge to Measure 16. The nature of the constitutional issues they assert does not require resolution on a case-by-case basis.

There is significant evidence in the record that depression is a major cause of suicide and is many times undiagnosed. Measure 16 requires drawing a fine line between rational, depressed terminally ill persons who want assisted suicide and terminally ill persons who express suicidal wishes, but are not capable of rational choice. It is about people who are most vulnerable to undue pressure. It is about permitting physicians to make decisions concerning mental competency and to provide the means by which people end their lives. Oregon's criminal homicide, civil commitment, and physician standard of care and disciplinary laws do not apply in equal measure to those who participate in Measure

1. On the other hand, the record indicates that plaintiff Jeffrey Weinkauf is a diabetic who takes insulin and is healthy. He has not been given a prognosis of six months to live, has not indicated any desire to commit suicide, and has no history of severe depression. Plaintiff Claudine Stotler was told in 1992 that she had six months to live. (Plaintiffs' Supplemental Statement of Material Facts (# 174)). She has a cancerous lung and liver, and pancreatic and brain tumors. *Id.* Her doctor thought the cancer had metastasized, and that there was nothing further that could be done medically. (Plaintiffs' Supplemental Statement of Material Facts: Plaintiffs' Supplemental Exhibit List, (# 175), Exhibit W at 11). However, the "tumor review board" thought that surgery might help. *Id.* She did undergo multiple surgeries in 1992–1994 and has not received an update on her prognosis. Neither plaintiff Weinkauf or plaintiff Stotler have demonstrated a sufficient threat of harm from Measure 16, and, therefore do not have standing.

16. It is difficult, at best, to decide Article III standing based on a terminally ill person's mental status. Plaintiffs Dutson and Elsner should not be denied standing, because they have not become so depressed they want to commit suicide, or until they receive and take a fatal drug dosage and either die or are close to death. As noted in the equal protection opinion, Measure 16 implements a significantly lesser standard of care for physicians. This, itself, would confer standing on these plaintiffs.

Defendants Harcleroad and members of the Oregon Board of Medical Examiners are named as defendants because they have some enforcement responsibilities regarding Measure 16.[2] The alleged injury-producing conduct is their recognition of Measure 16's validity and enforcement of its terms. Defendants' alleged conduct in recognizing and enforcing an unconstitutional statute would be a sufficient indirect cause of any future injury to plaintiffs.

In addition, it is sufficiently likely that plaintiffs Dutson and Elsner would benefit from a judgment in this action. *See Duke Power Company v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *Bryant v. Yellen*, 447 U.S. 352, 100 S.Ct. 2232, 65 L.Ed.2d 184 (1980); *University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978). Their claims are ripe. It is difficult to imagine a legal proceeding with more sensitive constitutional values at issue. It is important that plaintiffs have standing to advance their constitutional positions.

## II. INTERVENORS

Certain terminally ill persons have moved to intervene as defendants. Fed. R.Civ.P. 24(a) provides that parties have a right to intervene when they are "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed.R.Civ.P. 24(b) permits parties to intervene when their claim or defense and the main action have a question of law or fact in common. Myriam Coppens and Nancy Dorr move to appear as *amicus curiae*. Coppens is a certified nurse practitioner, licensed marriage family therapist, and adjunct professor. She has taken difficult calls from suicidal people for several years. The interests Coppens and Dorr seek to represent in an *amicus* capacity are adequately covered by other named defendants, and their intervention is, therefore, unnecessary.

Dorr, Anthony Lynde, Tim Shuck, and Merrill Yukich all allegedly have "terminal illnesses" as defined by Measure 16. Shuck has AIDs and the virus has traveled to his brain. He has a prognosis of less than six months to live. (Defendants' Memorandum in Opposition to Motion for Preliminary Injunction (# 69), Affidavit of Timothy W. Shuck). Lynde has been diagnosed with bone cancer that currently is in remission. Prior to its remission, he experienced considerable pain. (*Id.*, Affidavit of Anthony A. Lynde). Dorr has breast cancer that has metastasized to the sternum. She expects to undergo high dosage chemotherapy with a bone marrow rescue. (*Id.*, Affidavit of Nancy Dorr). Yukich has lung cancer. Her doctor has informed her that she has a 20% chance to live one year, and if still alive, her chances for full recovery improve with each subsequent year.

Neither Lynde, Dorr, or Yukich have been given prognoses of six months to live. They argue that it is not necessary for them to be "qualified patients" under Measure 16 to have standing, because their interest is to protect the peace of mind of knowing they can obtain a lethal prescription in the future. Shuck is allowed to intervene because he has sufficiently demonstrated an interest to pro-

---

**2.** The evidence indicates that it is unlikely that plaintiffs Dutson or Elsner would become patients of OHSU. Both testified at their depositions that they did not expect to become OHSU patients in the future. (Supplemental Affidavit of Stephen K. Bushong (# 165), Exhibit A at 24, Exhibit B at 18). Any future injury to them due to Measure 16 would not be fairly traceable to OHSU, its president, Peter Kohler, or members of the Oregon State Board of Higher Education. *See Golden v. Zwickler, supra; City of Los Angeles v. Lyons, supra.* Plaintiffs lack standing to assert their equal protection claims against these defendants.

tect. The interests of Lynde, Dorr, and Yukich are adequately represented by other named parties, and intervention is not necessary.

■ Intervenor defendant Dr. Levin argues that plaintiff physicians Lee and Petty do not have third party standing to assert claims on behalf of their patients. This court found such third party standing for purposes of the preliminary injunction and is asked to reconsider based on a more complete record. A party who wishes to assert third party standing must demonstrate an injury in fact. *Singleton v. Wulff,* 428 U.S. 106, 114, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976). This court previously relied on direct financial impact as the basis for the physicians' injury in fact, based on *Singleton, supra.* However, intervenor defendant Dr. Levin has submitted evidence that the plaintiff physicians do not currently have patients who wish to request a Measure 16 prescription. Even if they did, these physicians are opposed to Measure 16 and would not have a sufficient personal stake to represent the interests of their patients who seek assisted suicide. *See Akron Center for Reproductive Health v. City of Akron,* 651 F.2d 1198, 1210–11 (6th Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2268, 73 L.Ed.2d 1283, *judgment aff'd in part, rev'd in part,* 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983). Any alleged financial loss must, therefore, be based on a decrease in "the pool of potential fee-paying patients." This is an inadequate basis for third party standing.

## III. DISMISSAL

■ Defendants argue that claims by the individual administrators of the residential care facilities should be dismissed. Fritz and June Beck own the plaintiff Willows Residential Care Facility. Sister Bernards is the administrator of Maryville Nursing Home. Their claims are dismissed to the extent they are asserted on behalf of the patients of the respective residential care facilities. The corporate facilities are the real parties in interest for purposes of asserting such claims. However, the individual administrators are entitled to assert First Amendment claims.

■ Defendants argue that the constitutional claims against the state of Oregon, the Oregon Attorney General, and OHSU should be dismissed on Eleventh Amendment immunity grounds.[3] In addition, they argue that claims against the Attorney General should be dismissed because they are not justiciable.

■ The Eleventh Amendment generally prohibits a federal court from exercising jurisdiction over a nonconsenting state defendant. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Eleventh Amendment is an explicit limitation on federal judicial power and applies to the state and its agencies "regardless of the nature of the relief sought." *Id.* at 100, 104 S.Ct. at 908. It bars federal courts from deciding claims against a state and its agencies unless the state has "unequivocally expressed" its consent to suit or there is an "unequivocal expression of congressional intent" to abrogate Eleventh Amendment immunity. *Id.* at 99, 104 S.Ct. at 907. It is undisputed that the state of Oregon has not consented to be sued nor has Congress abrogated the states' immunity from civil rights claims. Individual state officers who do not have a sufficient connection with the enforcement of a law may be covered by Eleventh Amendment immunity. *Ex parte Young,* 209 U.S. 123, 157, 28 S.Ct. 441, 452–53, 52 L.Ed. 714 (1908); *Fitts v. McGhee,* 172 U.S. 516, 529–30, 19 S.Ct. 269, 274–75, 43 L.Ed. 535 (1899). In addition, the Attorney General's authority under Oregon law "does not make the alleged injury fairly traceable to his action" as required by Article III. *Southern Pac. v. Brown,* 651 F.2d 613 (9th Cir.1980); *Long v. Van de Kamp,* 961 F.2d 151, 152 (9th Cir. 1992). Any claim against the Attorney General based on the enforcement or nonenforce-

---

**3.** The 1995 Oregon Legislature passed Senate Bill 2 which establishes OHSU as an independent public corporation. Its effective date was July 1, 1995. Defendants have failed to demonstrate that Eleventh Amendment immunity applies to OHSU in its new status as a public corporation.

ment of the criminal laws is not a justiciable case or controversy. *Id.*

Plaintiffs argue that it is appropriate to name Attorney General Kulongoski a defendant, because he does have enforcement and investigatory powers when ordered to use them by the Governor, and the Governor is also a party. Plaintiffs rely on *Quill v. Koppell,* 870 F.Supp. 78, 79 (S.D.N.Y.1994). However, the Governor has not directed the attorney general to enforce Measure 16. (Affidavit of Theodore R. Kulongoski (# 143)). Plaintiffs also claim that the attorney general is properly a defendant because he has issued a legal opinion regarding Measure 16, and that this role is sufficient. The court does not agree. Plaintiffs' constitutional claims against the State of Oregon, the Governor, and the attorney general are barred by Eleventh Amendment immunity. In addition, the claims against the attorney general are dismissed for lack of justiciability.

## IV. CONCLUSION

The appropriate parties to assert or defend claims in this action are:

1. Plaintiff terminally ill patients Eric Dutson and Janice Elsner,

2. Plaintiffs Maryville Nursing Home and Willows Residential Care Facility,

3. Plaintiffs Dr. Petty, Fritz, and June Beck, and Sister Bernards, for First Amendment claims only,

4. Defendants District Attorney Harcleroad, and members of the Oregon Board of Medical Examiners,

5. Intervenor defendants Goodwin, Lee, and Sinnard,

6. Intervenor defendant Dr. Levin, and

7. Intervenor defendant Tim Shuck.