**Charles R. HAWKINS, Jr., Plaintiff-Appellant,**

v.

**Frank A. HALL et al., Defendants-Appellees.**

No. 80–1257.

United States Court of Appeals, First Circuit.

Argued Jan. 6, 1981.

Decided March 25, 1981.

---

Gordon A. Martin, Jr., Boston, Mass., with whom James D. Hanrahan and Martin, Morse, Wylie & Kaplan, Boston, Mass., were on brief, for plaintiff-appellant.

Lee Carl Bromberg, Sp. Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen. and Bromberg, Sunstein & McGregor, Boston, Mass., were on brief, for defendants-appellees.

* Chief Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

1. In his complaint, Hawkins named fourteen defendants, among them the Commissioner of Corrections of the Commonwealth of Massachusetts, the chairman of the Massachusetts Parole Board, and twelve employees of MCI—Concord, including Superintendent Nicholas

Before MARKEY,* Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Plaintiff-appellant Charles R. Hawkins, Jr., filed a complaint in the district court charging that his civil rights had been violated while an inmate at the Massachusetts Correctional Institute—Concord. He alleged that on February 18, 1976, three days after a riot at Concord, he was verbally provoked and physically abused in the corridor of an inmate dormitory, beaten by several correction officers while being dragged across the prison yard, attacked again in the detention area that same day, and later was viciously assaulted and sexually abused by correction officers. Hawkins named the following correction officers as defendants: Paul Wilson, Charles Farley, Howard McNiff, Americo DeLuca, Richard Ferreira, John Squeglia, Noe Robert Labbe, and Leonard Scott.[1]

There are three issues on appeal: (1) whether the district court erred by failing to find as a matter of law that Hawkins' solitary confinement in a psychiatric observation cell constituted cruel and unusual punishment; (2) whether the district court erred in dismissing the complaint as against Commissioner of Corrections Frank A. Hall; and (3) whether the district court erred in denying Hawkins' post-trial motions for judgment notwithstanding the verdict and new trial.

We review the facts and all the reasonable inferences to be drawn from them in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Porcaro,* No. 79–1060 (1st Cir. Jan. 28, 1981); *United States v. Doran,* 483 F.2d

Genakos and the eight correction officers. Prior to trial on the merits, the district court granted defendant Commissioner of Corrections Frank A. Hall's motion to dismiss the action as against him. The parties filed a stipulation of dismissal with regard to defendant Paul Chernoff, the chairman of the Parole Board and defendant Robert A. Serafian.

369, 372 (1st Cir. 1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1612, 40 L.Ed.2d 111 (1974). Officer Wilson testified that when he directed a group of inmates, including Hawkins, to stay away from workmen who were replacing glass broken during the riot, appellant became provocative. Because Hawkins would not stop his yelling and screaming, Wilson decided to place him in the detention area. Hawkins would not go voluntarily but struck Officer Charles Farley, who had sought to aid Wilson. Officers Wilson, Farley, McNiff and DeLuca picked up Hawkins by the legs and moved down the stairs toward the detention area. All fell to the bottom of the staircase. Hawkins, who testified that he was knocked senseless, stood up and said he would "walk like a man." He then broke away from DeLuca's grasp and swung at Farley. Several officers sought to restrain Hawkins; Richard Ferreira testified that the appellant bit him as he was moved to the detention area. Officer Labbe, who was stationed at the detention area, had been informed by telephone of the imminent arrival of Hawkins. Although Hawkins was passive after being brought into the detention area, Labbe decided, because of his prior conduct, that Hawkins should be confined to an observation cell pending medical or psychiatric review. According to routine, he was stripped and searched before being placed in Observation Cell # 1 by Officer Squeglia. Pending examination by medical personnel and an assessment of his psychiatric condition, Hawkins was not permitted clothing.

The observation cell, called the "Blue Room," was used to house temporarily violent and/or suicidal inmates. It was unfurnished except for a seatless hole-in-the-floor toilet with an outside flush and one bare bulb light fixture. It was six to eight feet wide, and ten to twelve feet long.

When an inmate was placed in the observation cell, correctional personnel were instructed to contact the medical and/or psychiatric staff so that it could be determined whether and when he was to be removed. Within a short time after Hawkins was confined in the observation cell, he was observed by a paramedic, an assistant to the psychiatric professional assigned to Concord. He was examined by a physician and psychiatric social worker the next morning. Hawkins was moved from the cell pursuant to an order of the paramedic and the institution physician within twenty-four hours of his confinement.

The case was tried to a jury. At the close of plaintiff's case, the district court permitted Hawkins to amend his complaint by adding the following:

> [T]he maintenance of a cell, baren, [sic] such as the Blue Room, at M.C.I. Concord, by the Defendant Genakos constituted a violation of the Eighth Amendment and the placing of the Plaintiff Charles Hawkins in that cell when he was not suicidal in any way constituted a violation of his constitutional rights.

The court denied the motion of both parties for a directed verdict with regard to the maintenance and use of the observation cell.

Because of the multiplicity of factual issues and defendants, the court submitted the case to the jury with special interrogatories and instructions. With regard to the observation cell, defendants requested an instruction that the correction officials were entitled to a presumption that they acted properly in placing Hawkins in it. Plaintiff sought an instruction that the jury be required to find an eighth amendment violation if they determined that Hawkins was denied any of the basic necessities such as bedding and articles for personal hygiene while confined in the observation cell. The court denied both requests; it instructed in pertinent part:

> But prison guards may not inflict unnecessary or wanton pain on any inmate, nor may they subject an inmate to inhumane conditions, conditions which shock the conscience of civilized people, conditions which transgress our concepts of humanity and dignity and decency. They may not do that. Nor may they punish an inmate.
>
> . . . .

. . . You have to determine what happened; and after you have determined what did happen, then you must make a judgment whether the totality of what happened was so inhumane, so indecent as to violate the plaintiff's constitutional rights.

The jury found against Hawkins on all of his beating and assault claims. It further determined that the "confinement of Charles R. Hawkins, Jr. in the Blue Room Observation Cell No. 1 on order of Noe Robert Labbe and the retention of Hawkins by Richard Ferreira and Labbe on February 18 and 19, 1976, [did not] violate Hawkins' constitutional right to be free from cruel and unusual punishment." The jury answered all the special interrogatories in defendants' favor. The district court entered judgment for the defendants and denied plaintiff's post-trial motions for judgment notwithstanding the verdict and new trial. This appeal followed.

We reject Hawkins' argument that the district court erred by failing to find as a matter of law that Hawkins' confinement in the observation cell violated the eighth amendment. It was within the province of the jury to find and evaluate the facts and determine whether conditions were so "inhumane" as to "shock the conscience of civilized people" and "transgress our concepts of humanity and dignity and decency." [2] The district court properly instructed the jury on this issue. The jury's role is not limited simply, as the appellant argues, to finding historical fact.

■ This court has used two tests to determine whether there has been a violation of the eighth amendment's proscription against "cruel and unusual punishment":

(1) whether the punishment is so grossly disproportionate to the offense, and (2) whether the punishment is so barbarous that it offends society's evolving sense of decency. *Nadeau v. Helgemoe*, 561 F.2d 411, 413 (1st Cir. 1977). Viewing the evidence in the light most favorable to the Government, the jury could decide that appellant's eighth amendment rights had not been infringed. Hawkins was put in the observation cell in response to irrational and violent behavior. After striking one officer, he resisted four others. There was testimony that, shortly after saying that he would "walk like a man" to the detention area, Hawkins reacted violently again and sought to strike one of the two escorting officers. When efforts were made to restrain him, appellant struggled with the officers and bit one of them. Such behavior warranted Hawkins' temporary confinement in the observation cell.[3] Doubts about his psychiatric status—the possibility that he might do something self-destructive or harmful to others—was sufficient reason for having Hawkins stripped and searched. We cannot conclude that a reasonable jury would have to find appellant's placement in the observation cell grossly disproportionate to his behavior.

■ We next examine Hawkins' argument that his confinement was so barbarous as to offend society's sense of decency. Solitary confinement is not per se impermissible. "It may be a necessary tool of prison discipline, both to punish infractions and to control and perhaps protect inmates whose presence within the general population would create unmanageable risks." *O'Brien v. Moriarty*, 489 F.2d 941, 944 (1st Cir. 1974). But the conditions of confinement within an institution cannot "violate

---

**2.** We recognize that because one of the important functions of the Bill of Rights is to protect the rights of individuals who may not be popular in the community, there are types and degrees of conduct which, no matter how construed or excused by a jury, must be held to violate constitutional norms as a matter of law—for example, torture. The present fact-sensitive incident, involving conflicting claims of misconduct and extenuating circumstances, is not, we think, in that category. Where there

are so many nuances and facts to evaluate, and reasonable people could differ as to whether, overall, eighth amendment standards were transgressed, we think traditional concepts of the role of the jury make it proper that the final judgment be left to the jury.

**3.** We note that at the time of the incident there were no regulations requiring a corrections officer to record in writing his reasons for placing an inmate in the observation cell.

contemporary standards of decency." *M.C.I. Concord Advisory Bd. v. Hall,* 447 F.Supp. 398, 404 (D.Mass.1978); *see Inmates of Suffolk County Jail v. Eisenstadt,* 360 F.Supp. 676, 688 (D.Mass.1973), *aff'd,* 494 F.2d 1196 (1st Cir. 1974), *cert. denied,* 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 189 (1974). Thus, unconstitutional conditions may exist where, for example, there is "doublecelling in certain rooms designed for single occupancy, the lack of adequate fresh air, plumbing, lighting and ventilation, and the dearth of vocational and recreational facilities." *M.C.I. Concord Advisory Bd. v. Hall,* 447 F.Supp. at 404. "An isolation cell must be sanitary, adequately lighted and ventilated." *Laaman v. Helgemoe,* 437 F.Supp. 269, 310 (D.N.H.1977).

In the case at hand, it is undeniable that the conditions in the observation cell were harsh. They were not, however, so barbarous as to constitute "cruel and unusual punishment" as a matter of law. The evidence viewed most favorably to the defendants shows that the cell provided satisfactory shelter, ventilation, light and heat. Prison officers checked on Hawkins periodically. A paramedic observed him shortly after his placement in the cell, and a psychiatric social worker and physician saw him the next morning. Hawkins was released from the observation cell less than twenty-four hours after his initial confinement. This was, however, more than four hours after the last member of the Legal Medical staff had seen him. It concerns us that appellant spent more time in the observation cell than was necessary. But testimony established that the late release was not caused by the correction officers who did not have authority to transfer Hawkins before receiving orders from the institution physician or psychiatric staff.

Our review of the record makes it clear that there was sufficient evidence for the jury findings on all counts. The district court properly denied the motion for judgment notwithstanding the verdict and for a

new trial as to all defendants. Given that determination, we need not reach the issue of whether the district court erred in granting the motion to dismiss this complaint as against Commissioner of Corrections Hall.[4]

*Affirmed.*

---

**4.** We note, however, that appellant's use of *DiMarzo v. Cahill,* 575 F.2d 15 (1st Cir. 1978), is inapposite. In *DiMarzo,* this court specifically stated that we were "not confronted with sporadic incidents, over which the Commissioner might properly claim to have no knowledge or control." *Id.* at 17.