**Ronald A.X. STOKES,
Plaintiff, Appellee,**

v.

**Michael V. FAIR, et al.,
Defendants, Appellants.**

**No. 85–1990.**

United States Court of Appeals,
First Circuit.

Argued May 7, 1986.
Decided July 16, 1986.

William D. Luzier, Jr., Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Frederick W. Riley, Asst. Atty. Gen., Chief, Criminal Bureau, and Barbara A.H. Smith, Asst. Atty. Gen., Chief, Criminal Appellate Div., Boston, Mass., were on brief, for defendants, appellants.

Martin J. Newhouse, with whom John C. Bartenstein and Ropes & Gray, Boston, Mass., were on brief, for plaintiff, appellee.

Before COFFIN and TORRUELLA, Circuit Judges, and MALETZ,* Senior Judge.

TORRUELLA, Circuit Judge.

This case is before us on appeal from a summary judgment concluding that the

---

* Of the United States Court of International Trade, sitting by designation.

"awaiting action status" detention regulations of the Massachusetts Department of Corrections, 103 CMR 430.19 and 103 CMR 420.13(2)(b), create a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. It was alleged that Stokes, an inmate in the Massachusetts prisons, had been confined in the segregated confinement status on several occasions, allegedly for unreasonably long periods of time without constitutionally adequate notice or review. The parties set forth the issue for resolution by the district court in an agreed statement of facts. The court found that the regulations in question are analogous to those discussed by the Supreme Court in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) and ruled that these regulations created a protected liberty interest. The court therefore granted summary judgment on plaintiff's motion for summary judgment and denied same to the defendants.

The basis of the state's argument is that the Massachusetts regulations are distinguishable from those of Pennsylvania, which were analyzed in *Hewitt.* Appellants contend that the elements which the Supreme Court found crucial are lacking here. We disagree.

The Supreme Court in *Hewitt* found that prison officials have broad administrative and discretionary authority over the institutions they manage. Prisoners retain only a narrow range of protected liberty interests. Therefore, administrative segregation is the sort of confinement that inmates can reasonably anticipate receiving at some point in their incarceration and it accordingly does not involve any interest independently protected by the Due Process Clause. The state, however, may create a protected liberty interest through the enactment of certain statutory or regulatory measures.

In analyzing the Pennsylvania statutes and regulations,[1] the Court articulates two

---

1. The regulations considered by the Supreme Court in *Hewitt* read as follows:

criteria which it believes separate regulations that create such interest from simple procedural guidelines: 1) the use of language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must" be employed; and 2) the fact that the administrative segregation will not occur absent specified substantive predicates—viz., "the need for control," or "the threat of a serious disturbance." *Id.* at 471–72, 103 S.Ct. at 871–72. As the Court succinctly stated:

"[T]he repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest."

*Id.* at 472, 103 S.Ct. at 871.

Our review of the Massachusetts regulations in light of the Supreme Court analysis, and in comparison to the Pennsylvania regulations in *Hewitt*, leads us to affirm the decision of the district court. 103 CMR 430.19 provides as follows:

"(1) The superintendent or his designee may authorize the placement of an inmate in detention in awaiting action status pending:

(a) A hearing on a disciplinary offense by the inmate

(b) An investigation of a possible disciplinary offense by the inmate

(c) A transfer or a reclassification of the inmate to a higher custody status, or

(d) Imposition of isolation time sanction on the inmate when the inmate's continued presence in the general population poses a serious threat to persons, property, or the security of the institution.

(2) The superintendent shall designate such person or persons as he deems appropriate to review the status of inmates housed in detention in awaiting action on a weekly basis. An inmate shall be released from detention when the reasons for his initial placement cease to exist or when his return to general population no longer poses a serious threat to persons, property, or the security of the institution or when he is no longer in the status specified in any one of 103 CMR 430.-19(1)(a) through 430.19(1)(d)."

103 CMR 420.13(2)(b) governing the transfer of inmates to a higher custody status provides that:

"Where the Deputy Commissioner for Classification and Treatment or the Superintendent or his designee determines at any time prior to or during [a proceeding for reclassification to a higher custody status] that there is an immediate threat to the health or safety of the resident or to others, the resident may be placed in an awaiting action status until there is a final decision about a transfer."

Both regulations contain substantive predicates which limit official discretion. In 430.19, they are the four conditions listed in 1(a) through (d). The predicate condition found in 1(d) and that in 420.13(2)(b) are of the same type as the example given by the Supreme Court—where the inmate's remaining in the general population poses a threat. Appellants argue that the criteria are largely non-predictive and ministerial in nature because they do not call for the

---

"An inmate who has allegedly committed a Class I Misconduct may be placed in Close or Maximum Administrative Custody upon approval of the officer in charge of the institution, not routinely but based upon his assessment of the situation and the need for control pending application of procedures under § 95.103 of this title." 37 Pa. Code § 95.-104(b)(1) (1978).

"An inmate may be temporarily confined to Close or Maximum Administrative Custody in an investigative status upon approval of the officer in charge of the institution where it has been determined that there is a threat of a serious disturbance, or a serious threat to the individual or others. The inmate shall be notified in writing as soon as possible that he is under investigation and that he will receive a hearing if any disciplinary action is being considered after the investigation is completed. An investigation shall begin immediately to determine whether or not a behavior violation has occurred. If no behavior violation has occurred, the inmate must be released as soon as the reason for the security concern has abated but in all cases within ten days." *Id.* § 95.104(b)(3).

exercise of judgment or discretion on the part of correctional officials. We disagree. Both regulations clearly state that when any of these conditions are present, the correction officials *may* authorize the placement of the inmate in awaiting action status. Thus, while officials have the ultimate discretion to segregate the inmates, segregation is permissible only when one of the specific situations exists.

Appellants concede that there is mandatory language in 103 CMR 430.19(2). It is their contention, however, that there is no such language in subsection (1), which limits the discretion of the correctional officials in the *initial* placement in awaiting action status. We agree with the district court that an attempt to create a distinction between a review of the initiation of confinement and that of continuing confinement cuts the matter too finely. The mandatory language of 103 CMR 430.19 provides in part that the superintendent *shall designate* a person or persons to review the status of awaiting action inmates and that such review *shall take place* on a weekly basis. The inmate *shall be released* from the status detention when reasons for it cease to exist. While it is true that the Pennsylvania regulations provide more specifics on the process which is due to the inmate it is clear that both states' regulations anticipate rapid follow-up to review the inmates' detention status.

We therefore agree with the district court that Massachusetts has, through the promulgation of these regulations, created a liberty interest entitling appellee to procedural due process in the initiation and continuance in awaiting action status detention.

*Affirmed.*