**George P. McLAUGHLIN, Plaintiff,**

v.

**Michael V. FAIR, Commissioner For the Massachusetts Department of Correction, et al., Defendants.**

**Civ. A. No. 89–0105–S.**

United States District Court,
D. Massachusetts.

April 11, 1989.

## ORDER ON MOTION FOR APPOINTMENT OF COUNSEL

JOYCE LONDON ALEXANDER,
United States Magistrate.

Plaintiff, George P. McLaughlin, an inmate at Old Colony Correctional Center in Bridgewater, Massachusetts, brings this motion for appointment of counsel pursuant to 28 U.S.C. § 1915(d). The motion arises from a civil rights action under 42 U.S.C. § 1983 and § 1985; and 28 U.S.C. § 1343, § 2201, § 2202, alleging an arbitrary and capricious denial of due process and a deprivation of his constitutional rights by the named Department of Correction ("DOC") officials. These allegations are based on the DOC's decision to transfer the plaintiff from the "minimum" security facility, Northeastern Correctional Center, to the "medium" security facility, Old Colony Correctional Center, which transfer was prompted by reasons having no connection to the plaintiff's conduct.

This Court recognizes that a *pro se* complaint is to be examined utilizing less stringent standards than those imposed upon one drafted by a lawyer and such complaints are to be construed liberally. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Additionally, the decision whether to appoint counsel is within the sound discretion of the district court. *Cookish v. Cunningham,* 787 F.2d 1, 2–3 (1st Cir.1986). Therefore, if the com-

plaint fails to state a claim, the district court may properly deny a request for appointed counsel. *Id.*

In the case *sub judice*, even with a liberal construction of the complaint, this Court finds that plaintiff has failed to state a claim.

In Count 1 of the complaint, the plaintiff claims the defendant Fair violated plaintiff's .due process rights by the act of removing his minimum security custody status, with disregard for his state created liberty interest. (Complaint, p. 9). Counts 2, 3 and 4, respectively, allege that said transfer inhibited plaintiff's possibilities for commutation; violated justified expectations in a specific classification after 13 years of successful participation in minimum security programs; and, his equal protection rights were violated because the transfer was effectuated prior to any type of classification hearing. (Complaint pp. 9–10).

 It is beyond peradventure that prison transfers are within the statutory discretion of the prison administrator. *Four Certain Unnamed Inmates v. Hall,* 550 F.2d 1291, 1292 (1st Cir.1977). Moreover, as the Supreme Court noted in *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976), "[T]he Due Process Clause in and of itself does not protect a duly convicted prisoner against transfer from one institution to another within the state prison system."

In *Meachum, supra,* the Court was faced with a due process challenge by a Massachusetts state prisoner concerning his transfer from one institution to another. The Court held that the transfer, under the Massachusetts statutory scheme, did not infringe or implicate any liberty interest within the meaning of the due process clause. The Court stated,

> Massachusetts law, [M.G.L. c. 127, § 20, § 97], conferred no right on the prisoner to remain in the prison to which he was initially assigned ... transfers between Massachusetts prisons are not conditioned upon the occurrence of specific events. On the contrary, transfer in a wide variety of circumstances is vested in prison officials.

Plaintiff's contention that his due process rights were violated because he was not given a hearing prior to transfer is also unpersuasive. The First Circuit has held that the regulations which govern personal transfers to departmental segregation units ("DSU") create liberty interests which are protected by the due process clause. *Parenti v. Ponte,* 727 F.2d 21 (1st Cir.1984). However, the plaintiff *sub judice* was not transferred to a DSU; rather he alleges that he was placed in a medium security facility in AA status. The plaintiff has not alleged that AA status is the equivalent of a DSU transfer. As such, the principle announced in *Parenti, supra,* is not applicable.

Counts 5 and 6 contend that plaintiff's transfer was based on the actions of two other persons serving life sentences and not his own misconduct. Plaintiff avers that such a transfer violated his civil rights by creating a sub-class of individuals singled out for punishment in violation of the equal protection/due process clause of the Fifth, Sixth and Fourteenth Amendments. Plaintiff's allegations that his transfer was made for administrative reasons or in response to public and/or political pressures fails to state a denial of due process under *Meachum, supra. Meachum* makes clear that the Court's evaluation of pertinent Massachusetts law reveals the existence of discretion, on the part of DOC officials in making transfer decisions. Specifically, transfers between state institutions need not be based upon some disciplinary end. Consequently, plaintiff's allegation that he had not engaged in misconduct to prompt his transfer is unavailing. Furthermore, plaintiff was provided with a hearing albeit after said transfer.

Counts 7 and 8 aver that because the plaintiff's counsel and caseworker were not allowed to speak during the post-transfer hearing, the defendants violated 103 C.M. R. 420(13)(d), as well as the equal protection and due process clauses of the Fifth, Sixth and Fourteenth Amendments. Further, plaintiff asserts that the actions of

the defendants violated unspecified sections of the Massachusetts Declaration of Rights.

The Code of Massachusetts Regulations 420.13(i) states in pertinent part, "[T]he resident may request the Board at its *discretion* to hear witnesses who wish to testify in his behalf." (emphasis added). Clearly, plaintiff's reading of the regulations was erroneous in that nowhere do the regulations provide that counsel or caseworker must be allowed to speak during transfer hearings. Moreover, in the absence of "the repeated use of explicitly mandatory language [which] demands a conclusion that the state has created a protected liberty interest," *Hewitt v. Helmes*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), plaintiff has no protectable federal constitutional right upon which to base his claim.

Accordingly, since plaintiff has failed to state a cognizable claim, his request for appointment of counsel is hereby denied.