915 F.2d 1557
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Robert F. SOWELL, Plaintiff, Appellant,
v.
Michael V. FAIR, et al., Defendants, Appellees.
 No. 89-1889.
 United States Court of Appeals, First Circuit.
 Sept. 18, 1990.
 
 Appeal from the United States District Court for the District of Massachusetts Joseph L. Tauro, District Judge.
 Robert F. Sowell on brief, pro se.
 Lynne M. Ford, Counsel, Department of Correction, and Nancy Ankers White, Special Assistant Attorney General, on Motion for Summary Disposition, for appellees.
 D.Mass.
 AFFIRMED.
 Before LEVIN H. CAMPBELL, TORRUELLA and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiff, a prisoner at Massachusetts Correctional Institution (M.C.I.) Cedar Junction, appeals from the district court's order dismissing his 42 U.S.C. Sec. 1983 complaint for failing to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).[1] The facts, as gleaned from the complaint and its exhibits, are as follows. While incarcerated at (M.C.I.) Norfolk, the plaintiff was observed participating in an unauthorized group demonstration on May 13, 1987. As a result, he was transferred to S.E.C.C. Bridgewater on May 14, 1987, and placed in administrative segregation for twenty-seven days. On May 27, 1987, plaintiff received a disciplinary report charging him with violating various Department of Corrections (DOC) regulations.[2] A disciplinary hearing was held on July 7, 1987, at which plaintiff was represented by counsel. Plaintiff was found guilty and sanctioned with twenty-seven days of detention, for which he received full credit for time served, and with the loss of two hundred days of good time credits. Plaintiff appealed this decision and lost. On August 14, 1987, plaintiff appeared before a classification board where he objected to his incarceration at S.E.C.C. Bridgewater because of conditions that were dangerous to his health. As a result of this hearing, plaintiff was transferred, over his objection, to M.C.I. Cedar Junction. Plaintiff appealed this transfer decision and lost.
 
 
 2
 The complaint charged various DOC officials[3] with violating plaintiff's Fifth, Fourteenth, and Eighth Amendment rights during and following the DOC's response to the unauthorized group demonstration at M.C.I. Norfolk. More specifically, the plaintiff alleged that his Fifth and Fourteenth Amendment rights to due process were violated by: (1) the DOC's failure to provide him with proper notice of the disciplinary report and the waiver of time limits with respect to that report;[4] (2) his transfer to "segregation status" at S.E.C.C. Bridgewater absent notice and a hearing before his transfer; (3) the admission of evidence, which the complaint does not identify, at the disciplinary hearing which followed plaintiff's transfer to S.E.C.C. Bridgewater, and (4) his transfer to a higher custody status at M.C.I. Cedar Junction. Plaintiff also alleged that his transfers and the following violated his Eighth Amendment right to be free from cruel and unusual punishment: (1) the government's use of deadly force in response to the demonstration and during his initial transfer from M.C.I. Norfolk to S.E.C.C. Bridgewater,[5] and (2) various health and safety violations (e.g. water with a high iron content, unclean eating utensils, inoperative smoke detectors, and dangerous chemicals in his toilet) to which the plaintiff was subjected while incarcerated at S.E.C.C. Bridgewater. The complaint sought declaratory relief, monetary damages, and expungement of all references of disciplinary infractions from the plaintiff's prison record.[6]
 
 
 3
 Our review of the district court's dismissal is plenary. See Carmen Delia Gonzales-Bernal, etc., et al v. United States of America, slip op. 89-1894, p. 3, (1st Cir., July 3, 1990). We assume the factual allegations of the complaint are true. If it is clear that no relief could be granted as a matter of law, under any set of facts that could be proven consistent with the allegations, the complaint must be dismissed. Where the plaintiff is illiterate and pro se, we hold the allegations of the complaint, " 'to less stringent standards than formal pleadings drafted by lawyers.' ". Hughes v. Rowe, 449 U.S. 5, 9-10 (1980). (citations omitted).
 
 
 4
 At the outset, we observe that the instant appeal presents this court with a case in which the factual and legal allegations of the complaint are substantially different from the factual and legal allegations of plaintiff's appellate brief. While both the complaint and the brief assert that the plaintiff's rights to due process were violated by his May 14, 1987 transfer to S.E.C.C. Bridgewater, the complaint (paragraphs 9-12, Claim for Relief, Sec. III) alleges that the plaintiff was unlawfully placed in segregation upon arriving at S.E.C.C. Bridgewater, while the plaintiff's brief does not argue this claim. Rather, on appeal the plaintiff argues that he should not have been transferred to S.E.C.C. Bridgewater without first being afforded a classification hearing allegedly required by Code Mass.Regs., tit. 103, Sec. 420.13.[7] Plaintiff further argues that his subsequent transfer to M.C.I. Cedar Junction was the result of the recommendation of a classification board which lacked jurisdiction to recommend plaintiff's transfer. However, the complaint does not allege any facts to support this argument. Plaintiff also argues that the July 7, 1987 disciplinary board's finding was not supported by substantial evidence and makes nothing of the complaint's allegation that evidence was unlawfully admitted at his disciplinary hearing. Plaintiff does not press his Eighth Amendment claims on appeal.
 
 
 5
 Where the complaint and the plaintiff's appellate brief are so divergent as to suggest that each was prepared with a different case in mind, we might, as the government urges, affirm dismissal on the grounds that the allegations of the complaint that are not argued on appeal have been waived, and the allegations in the brief that are not raised by the complaint must be disregarded. Federal Deposit Ins. Corp. v. Jose Rivera-Arroyo, Et Al., slip op. 89-2026, pp. 3-4, n. 1, (1st Cir., June 29, 1990); Glaros v. Perse, 628 F.2d 679, 681 (1st Cir.1980). However, as it is also clear that this complaint, on its face, does not allege sufficient facts to support a claim for relief under 42 U.S.C. Sec. 1983, we will address the allegations of the complaint.
 
 Due Process
 
 6
 The plaintiff claims that his constitutional rights to due process were violated by (1) his transfer to S.E.C.C. Bridgewater and placement in segregation without first being afforded notice and a hearing; (2) the DOC's failure to give him proper notice of the disciplinary report and waiver of time limits with respect to that report; (3) the admission of evidence at the July 7, 1987 disciplinary hearing, which was not identified in the disciplinary report; (4) his transfer to M.C.I. Cedar Junction. We deal with each of these claims in reverse order.
 
 
 7
 "Liberty interests protected by the Fourteenth Amendment may arise from two sources--the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983). The Due Process Clause in and of itself does not guarantee any particular confinement status to a duly convicted prison inmate. See Meachum v. Fano, 427 U.S. 215, 225 (1976); Parenti v. Ponte, 727 F.2d 21, 23 (1st Cir.1984). To the extent that the complaint may be read to allege that plaintiff's transfer to Cedar Junction entailed a loss of liberty by virtue of the more restrictive confinement conditions that generally accompany maximum security prisons, it fails to state a claim upon which relief can be granted. "[P]rison officials are free to transfer inmates from one facility to another within the correctional system, provided state rules allow it and the inmate could have been sent to any of the facilities upon commencing his sentence." Domegan v. Fair, 859 F.2d 1059, 1063. (1st Cir.1988). The relevant statutes governing prisoner transfers, M.G.L. c. 127, Secs. 20 and 97, have remained unchanged since Meachum v. Fano, 427 U.S. 215, 226-227 (1977) determined that they did not create a liberty interest requiring the protections of procedural due process. The regulations plaintiff cites, 103 C.M.R. Sec. 420.13 (1978), only set forth procedures to be followed in classification hearings, and do not contain any substantive standards limiting the Commissioner's discretion to transfer inmates. Thus, they do not create a protected liberty interest in plaintiff's incarceration status. See Lombardo v. Meachum, 548 F.2d 13 (1st Cir.1977); McLaughlin v. Hall, 125 F.R.D. 22 (D.Mass.1989), aff'd, 907 F.2d 142 (1st Cir., 1990) (unpublished per curiam). Where neither federal nor state law recognized a liberty interest in plaintiff's incarceration at any particular institution, plaintiff has no cause to complain that his transfer to M.C.I. Cedar Junction violated 42 U.S.C. Sec. 1983. The Commissioner was free to transfer plaintiff back to Cedar Junction, where he was originally confined upon commencing his sentence.
 
 
 8
 The plaintiff's challenges to the July 7, 1987 disciplinary hearing are equally without merit. In general, where a disciplinary hearing may result in the loss of a protected liberty interest, an inmate must receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present documentary evidence in his defense; (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Institution v. Hall, 472 U.S. 445, 454 (1985), citing Wolff v. McDonnell, 418 U.S. 539, 563-567 (1974). We discern no constitutional deprivation in either the timing or the content of the disciplinary report which gave plaintiff notice of his alleged rules infractions. Plaintiff received the disciplinary report on May 27, 1987, in ample time to prepare for the disciplinary hearing.[8] That plaintiff may not have received notice of certain evidence that was to be admitted against him states no claim for relief, for under the aforementioned standards, plaintiff is only entitled to notice of the charges against him, not to notice of each item of evidence which will be offered to prove the charges.[9]
 
 
 9
 We pause over plaintiff's claim that his transfer to S.E.C.C. Bridgewater violated his right to due process because (1) he was not given a classification hearing before this transfer, and (2) he was placed in segregation upon arriving at S.E.C.C. Bridgewater. As noted above, to the extent plaintiff complains that his transfer to S.E.C.C. Bridgewater violated due process, he fails to state a cognizable claim, for he had no right to remain at M.C.I. Norfolk. The complaint alleges that plaintiff was transferred to Bridgewater and placed in segregation without notice, a hearing, or being apprised of the reasons for this transfer. Under Massachusetts law, plaintiff had a protected liberty interest in remaining free from disciplinary and administrative segregation absent procedural due process. See Parenti v. Ponte, 727 F.2d 21 (1st Cir.1984) (construing 103 C.M.R. Sec. 421.07, segregation in DSUs), Stokes v. Fair, 795 F.2d 235 (1st Cir.1986) (construing 103 C.M.R. Sec. 430.19(1)(a-d), (2) (1978) and 103 C.M.R. Sec. 420.13(2)(b)(1978), governing placement in detention on awaiting action status). As the complaint's attachments indicate that plaintiff was placed in administrative segregation upon arriving at S.E.C.C. Bridgewater, and the regulations cited in Stokes, supra, gave plaintiff a liberty interest in remaining free from such confinement absent procedural due process, we must next inquire what process was due the plaintiff, and, finally, whether the allegations of the complaint state any claim actionable under applicable law.[10]
 
 
 10
 The seminal case on administrative segregation is Hewitt v. Helms, 459 U.S. 460 (1983), which held that when a state, through its regulations, confers a protected liberty interest on prisoners in remaining in the general prison population, then an inmate is entitled to notice, an opportunity to present his view, and an informal, nonadversary review of the evidence relating to the decision to confine him in administrative segregation. Id., 459 U.S. at 476. Moreover, the court determined that this proceeding "must occur within a reasonable time following an inmate's transfer ...". 459 U.S. at 476, n. 8. Finally, the court noted that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates." 459 U.S. at 477, n. 9.
 
 
 11
 Where the complaint alleges only in the most disconnected fashion that plaintiff did not receive notice or a hearing before his transfer to administrative segregation at Bridgewater, and makes no allegations that the appropriate officials failed to take the periodic reviews of plaintiff's status required by Hewitt, it fails to state an actionable claim. This is because neither the Constitution nor Massachusetts law required that plaintiff be given notice and a hearing before he was placed in administrative segregation. We decline to read facts into the complaint. Hurney v. Carver, 602 F.2d 993, 995 (1st Cir.1979).[11]
 
 Eighth Amendment
 
 12
 As we noted previously, plaintiff has waived his Eighth Amendment claims by failing to argue them on appeal. United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990), cert. denied, 110 S.Ct. 1814 (1990). We add that the conditions attendant plaintiff's incarceration at S.E.C.C. Bridgewater (i.e. water with a high iron content, allegedly dangerous chemicals in his toilet, unclean eating utensils and inoperative smoke detectors) were not so harsh as to " 'violate contemporary standards of decency' ". Hawkins v. Hall, 644 F.2d 914, 917-918 (1st Cir.1981) (citations omitted). This is particularly true where the complaint lacked detailed factual allegations identifying what chemicals plaintiff was exposed to, what harm resulted, and what efforts plaintiff made to bring these conditions to the attention of the authorities. Similarly, plaintiff's claim that the DOC employed excessive force in transferring him to S.E.C.C. Bridgewater did not state a claim under the Eighth Amendment. Assuming that the plaintiff's claustrophobia was a "serious medical need", the complaint did not allege that the defendants or other DOC officials exhibited deliberate indifference to plaintiff's condition. Rather, the complaint alleges that the prison guards responded to his condition by placing him on his back before removing him to Bridgewater. This does not amount to cruel and unusual punishment under the Eighth Amendment.
 
 
 13
 Judgment affirmed.
 
 
 
 [1]
 The district court allowed the government's motion to dismiss after the plaintiff failed to oppose it. Thereafter, plaintiff moved to rescind the court's order of dismissal, and his motion was denied. This appeal followed
 
 
 [2]
 Specifically, the plaintiff was charged with "being an active participant in a group of inmates marching throughout the institution chanting 'unity' and 'work strike' " on May 13, 1987, thereby (1) violating a departmental rule or regulation, or any other rule, regulation, or condition of an institution or community based program, (2) engaging in conduct which disrupts or interferes with the security or orderly running of the institution; (3) participating in or encouraging a riot, work stoppage, hostage taking, or unauthorized group demonstration. Mass.Code Regs., tit. 103, Sec. 430.24(2), (8), (14) (May 29, 1987)
 
 
 [3]
 Michael V. Fair, Commissioner of Corrections, Norman Butler, Superintendent of M.C.I. Norfolk, Ronald Amaral, Superintendent of the Southeast Correctional Center (S.E.C.C.) Bridgewater, and George Vose, Jr., Deputy Commissioner of Corrections
 
 
 [4]
 Plaintiff alleged that the disciplinary report was written on May 18, 1987, and that he received it on May 27, 1987. Plaintiff further alleged that he did not receive notice that all time limits pertaining to the disciplinary report had been waived until May 22, 1987. Plaintiff's Complaint, p 13, exhibits 1 and 2
 
 
 [5]
 The complaint recited that the plaintiff was subjected to a "show of force" on May 14, 1987, during which DOC guards, armed as though ready "for a riot situation", entered plaintiff's unit, escorted him outside, and required plaintiff to "lie prone on the grass" while handcuffed. Plaintiff's Complaint, paragraphs 1, 6. Plaintiff complained to a prison guard that he was claustrophobic. The officer initially "was quite rough" and "kept forcing ... [plaintiff] to lie prone". After the officer verified the plaintiff's condition, plaintiff was placed on his back. Id., paragraphs 7, 8. Plaintiff was subsequently escorted to a reception area, strip-searched, and transferred to S.E.C.C. Bridgewater. Id., paragraphs 9-10. Plaintiff was taken to "the fort (segregation)" and placed "into (sic) cell" for twenty-seven days. Id., paragraphs 11-12
 
 
 [6]
 The complaint prayed for a declaration that plaintiff's federal and state constitutional rights were violated, as well as plaintiff's rights under the Massachusetts Civil Rights Act, G.L. c. 12, Secs. 11H and 11I, and DOC regulations, Mass.Code Regs., tit. 103, Sec. 420.00 et seq. (Classification) and tit. 103, Sec. 421.00 et seq. (Departmental Segregation Units)
 
 
 [7]
 We note that this regulation contained only procedural guidelines, and did not afford the plaintiff any constitutional rights to remain in a particular prison. Moreover, 103 C.M.R. Sec. 420.13 (1978) was superceded by certain emergency regulations which took effect on the day that plaintiff was transferred to S.E.C.C. Bridgewater, i.e., May 14, 1987. The preamble to these regulations recites "[t]he urgent demands of overcrowding and staffing, coupled with a disturbance and inmate work stoppage at M.C.I. Norfolk (involving 240 inmates) beginning May 13, 1987 and continuing to date, require immediate suspension of Department of Correction classification regulations, 103 C.M.R. 420.00 et seq. and their replacement by a revised and updated version of same." See Massachusetts Register, No. 557, p. 37, May 29, 1987
 
 
 [8]
 Under the regulations then in effect, the plaintiff was entitled to a preliminary investigation of the charges within a certain time, and to notice of the disciplinary report within one working day of the designation of the charges as major offenses. 103 C.M.R. Sec. 430.08 and 103 C.M.R. Sec. 430.09 (1978). While we calculate that these actions should have occurred by May 22, 1987, the DOC waived the relevant time limits, and the complaint's allegations do not suggest that any harm resulted to the plaintiff
 
 
 [9]
 The plaintiff argues on appeal that his rights to due process were violated by the disciplinary board's finding that plaintiff was guilty of the aforementioned rules infractions, and the affirmance of this finding on appeal by Deputy Commissioner Vose, absent substantial evidence. While we need not reach this argument since it was not raised below, we note that both the complaint and its exhibits indicate that the evidence was constitutionally sufficient under the standard set forth in Superintendent, Mass. Corr. Institution v. Hall, 472 U.S. 445, 454 (1985) (due process is satisfied where "some evidence" supports prison disciplinary board's decision to revoke good time credits). The disciplinary hearing record is attached to the complaint as Exhibits 4 and 5. It discloses that the evidence against plaintiff consisted of the report of the corrections officer who observed plaintiff among a group of one hundred seventy-five prisoners who were chanting "unity", "work strike", and "Attica." This report was corroborated by a videotape which depicted the plaintiff among this group. Although there was no evidence that plaintiff was chanting, this evidence was sufficient to support a finding that plaintiff was guilty of participating in an unauthorized group demonstration and not, as he contended, simply getting his daily exercise
 
 
 [10]
 Although the regulations cited in Stokes, supra, were superceded by amendments to 103 C.M.R. Sec. 430.00, et seq., which took effect on May 29, 1987, the complaint could state a claim for damages during the time the regulations discussed in Stokes were in effect
 
 
 [11]
 That plaintiff was released into the general population before his disciplinary hearing was held indicates that his status was reviewed. This inference is supported by an unmarked document attached to the complaint which indicates that plaintiff was transferred from the cell to which he was initially confined at Bridgewater after six days