Rowe v. Hillsborough County HOC      CV-98-449-SD  11/09/98  X

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE**

David B. Rowe

    v.                                      Civil No. 98-449-SD

Hillsborough County
House of Corrections, et al.


**REPORT AND RECOMMENDATION**

Pro se plaintiff David B. Rowe is a prisoner incarcerated at the Hillsborough County House of Corrections ("Hillsborough HOC"). He brought this civil rights action in forma pauperis, claiming that several of his constitutional rights were violated when his personal property was confiscated as punishment for his request for medication. His complaint is before me for preliminary review, to determine whether this action may proceed. See United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2); see also 28 U.S.C. § 1915A (a). As explained more fully below, I recommend that this action be dismissed for failing to state claims upon which relief may be granted. See LR 4.3(d)(2)(A)(i); 28 U.S.C. § 1915A(b)(1).

Discussion

Generously construing the complaint in plaintiff's favor and accepting all the allegations asserted therein as true, see Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe

<u>pro</u> <u>se</u> pleadings liberally in favor of that party); <u>Aulson v.</u>
<u>Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to
state a claim" standard of review), plaintiff tells the following
story in support of his claims.

On June 27, 1998, he asked to be released from his cell to
receive some medication, which the guard refused to allow him to
do. Plaintiff challenged the guard's contention that inmates had
to sign-up prior in order to be released from their cells for
medical purposes. In response to plaintiff's challenge that such
sign-ups are not standard procedure, plaintiff was placed in
"lock down" in his cell, and then later that day removed to 24
hour punitive segregation. During the transfer, his laundry,
bible, and legal papers were taken out of his cell and put in the
"property office." Both actions were taken without first giving
plaintiff an administrative hearing. Despite several requests
for his personal property, plaintiff did not receive it until
July 7, 1998.

This loss of property allegedly caused plaintiff a great
deal of personal stress. He requested medical attention for that
anxiety on July 3, but no one came. On July 6 he was asked
whether he was suicidal, but plaintiff said he was not. In this
complaint, however, plaintiff contends that the eleven day loss
of his personal property caused him emotional stress, mental

2

anguish, depression, anxiety, and great humiliation (because he did not have clean laundry during that period).

Based on these facts, plaintiff claims his rights under the First, Fourth, Fifth, Sixth, Eighth, Thirteenth and Fourteenth Amendments have been violated. The gravamen of his complaint, however, is that this loss of property: (1) denied him of his right to access the courts; (2) constituted cruel and unusual punishment, and (3) was done without due process of law. Plaintiff also asserts that he was mistreated because he is black, in violation of the equal protection clause. None of the alleged deprivations, however, rises to the level of a constitutional violation to support his claims for relief under 42 U.S.C. § 1983, § 1985 or § 1988.

(1) Right to Access the Courts.

Plaintiff contends that the eleven day loss of his legal papers prevented him from "communicating with the court," but not that any adverse court action occurred as a result. Although plaintiff enjoys a fundamental right to access the courts protected by the First and Fourteenth Amendment, see Bounds v. Smith, 430 U.S. 817, 821 (1977); Carter v. Fair, 786 F.2d 433, 435 (1st Cir. 1986), that right is not violated unless and until the denied access to the courts hindered his efforts to purse a legal claim. See Lewis v. Casey, 518 U.S. 343, 351, 355 (1996).

3

"The tools [Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Id. An alleged inability to "communicate" with the court for eleven days does not show, or even suggest, that plaintiff was actually injured, by way of a lost motion, missed filing deadline, or some other adverse consequence, in any court proceeding plaintiff may have had pending. Moreover, when, as here, the restricted access to his legal materials was reasonably related to a legitimate disciplinary goal, there is no cognizable constitutional deprivation. See id. at 361-62 (citing Turner v. Safley, 482 U.S. 78, 89 (1987) to explain why deference to local authorities regarding prison administration is appropriate). Accordingly, I find that plaintiff has not stated a viable denial of access to the courts claim. See id.

(2) Right to be free from Cruel and Unusual Punishment.

Plaintiff's contentions under the Eighth Amendment focus both on the alleged denial of medication and on the mental anguish he endured while deprived of his laundry. Neither contention demonstrates the requisite "sufficiently serious" misconduct inflicted by a prison official with "deliberate indifference" to plaintiff's needs to rise to the level of "cruel and unusual punishment" protected by the Eighth Amendment. See

4

Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991) (holding that an Eighth Amendment claim has both an objective and a subjective component).

Plaintiff's claims of denied medical care fail to show any reckless, callous, or deliberate indifference to his mental or physical health. Based on the allegations in the complaint, he was denied just one dosage of medication, with apparently no, or only a depreciable, effect on him. Similarly, though he asked for a psychiatrist, the nurse told him one would not be available for three days. On that day, plaintiff was asked whether he was suicidal, and he responded that he was not. No psychiatrist visited plaintiff. Failing to provide psychiatric services for an inmate who is simply "stressed out" because he does not have clean laundry does not approach the level of knowing, deliberate indifference to his serious medical needs required for an Eighth Amendment violation. See Watson v. Canton, 984 F.2d 537, 540 (1st Cir. 1993) (holding that deliberate indifference to serious medical needs requires wantonness or recklessness in the criminal law sense, not merely failure to provide adequate medical care); see also DesRosiers v. Moran, 949 F.2d 15, 18-19 (1st Cir. 1991) (applying Wilson's objective/subjective test to a claimed denial of medical care).

Similarly, plaintiff's assertion that the missing laundry

5

constituted "cruel and unusual punishment" falls short of the mark. While being deprived of clean laundry understandably could have been very upsetting to plaintiff, and may in fact caused him sincere anxiety, stress and humiliation, it does not approach the requisite "'unnecessary and wanton infliction of pain,'" nor does it appear to defy "contemporary standard[s] of decency" such that "the minimal civilized measure of life's necessities" were denied him, to invoke the protections of the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (quotation omitted). Eleven days without clean laundry may not be comfortable, but it simply is not inhumane. See Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Rhodes, 452 U.S. at 349)); see also Lewis, 518 U.S. at 361-62 (explaining how the Constitution does not require court to become embroiled in the details of prison administration).

I conclude, therefore, that the complaint fails to state a claim for an Eighth Amendment violation and recommend that plaintiff's § 1983 and § 1985 claims based thereon be dismissed.

(3) Right to Due Process of Law.

While not explicitly articulate, generously reading the facts in plaintiff's favor, the complaint may be construed as raising due process claims based on his move to punitive segregation prior to receiving a hearing and on his loss of property. Both contentions, however, fail to state a due process

6

claim actionable under § 1983 or § 1985.

Disciplinary transfers need not be accompanied by notice or a hearing, even if done in violation of prison regulations. <u>See</u> <u>Sandin v. Conner</u>, __ U.S. __, 115 S. Ct. 2293, 2300 (1995) (holding that the due process clause is not implicated unless the challenged transfer "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). Here, plaintiff does not even allege that prison regulations required that he receive a hearing prior to his "lock down." Nor does he allege that the disciplinary segregation adversely affected the length of his confinement. <u>See</u> <u>id.</u> Quite simply, within the prison environment, there is nothing "atypical and significant" about being in "lock down" for 24 hours. <u>See</u> <u>e.g.</u> <u>Stokes v. Fair</u>, 795 F.2d 235, 236 (1st Cir. 1986) (finding no constitutional liberty interest in being free from administrative segregation or from other transfers within the prison, for any reason or no reason at all). This claim, therefore, does not rise to the level of a constitutionally protected liberty interest.

Plaintiff's loss of property claim fails, both because the property was returned to him after only eleven days, and because New Hampshire law provides remedies to him to recover any damages sustained. <u>See</u> <u>Zinermon v. Burch</u>, 494 U.S. 113, 125-16 (1990)

7

(holding that the constitutional deprivation actionable under §
1983 is not complete unless and until the state fails to provide
due process); <u>Lowe v. Scott,</u> 959 F.2d 323, 340 (1st Cir. 1992)
(holding that adequate state remedies preclude a § 1983 action to
redress lost property); <u>see</u> <u>also</u> N.H. Rev. Stat. Ann. 28:16
(1988) (providing a statutory right to pursue claims against
county officials).

As plaintiff has not averred facts to support either a
liberty or a property deprivation without due process of law, I
find that his alleged due process deprivations fail to state a
claim upon which relief may be granted and recommend that they be
dismissed.

(4) <u>Right to Equal Protection</u>.

Although plaintiff asserts that he was mistreated because he
is black, which is a suspect class protected by the equal
protection clause of the Fourteenth Amendment, <u>see</u> <u>Yerardi's</u>
<u>Moody St. Restaurant & Lounge v. Bd. of Selectmen</u>, 932 F.2d 89,
94 (1st Cir. 1991) (explaining how the equal protection clause
protects suspect classes from inequitable governmental
treatment), he has failed to allege sufficient facts to support a
claim upon which relief may be granted for a violation of his
equal protection rights.  Plaintiff fails to state a single fact
which substantiates his bald allegation that he was placed in

8

lock-down and deprived of his personal property because he is black. Bald allegations are insufficient, without more, to state a viable civil rights claim. See Roth v. United States, 952 F.2d 611, 613 (1st Cir. 1991) (requiring plaintiff to present either direct or inferential factual allegations regarding "each material element necessary to sustain recovery" (quotation omitted)); see also Dewey v. University of N.H., 694 F.2d 1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 944 (1983) (requiring plaintiff allege the minimal facts necessary to substantiate a civil rights claim); Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995) ("[E]ven pro se litigants must do more than make mere conclusory statements regarding constitutional claims." (citations omitted)). Based on my review of the complaint, which fails to document a single incident of racial animus towards plaintiff, I conclude that plaintiff's racial discrimination claim is merely conclusory and fails to state an equal protection violation.

(5) The Other Constitutional Rights.

Finally, plaintiff also states, without alleging any facts in support of the assertions, that his Fourth, Fifth, Sixth and Thirteen Amendment rights were violated by the lock down and lost personal property. Although plaintiff asserts that his property was unlawfully taken, "the Fourth Amendment proscription against

9

unreasonable searches does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. 517, 526 (1984). The complaint, therefore, does not give rise to a Fourth Amendment claim. See id. at 527-28 (requiring that an inmate's expectation of privacy yield to institutional security concerns). Nothing alleged, or reasonably inferred from the allegations made, supports a claim for a Fifth, Sixth or Thirteenth Amendment violation. Accordingly, I recommend that plaintiff's alleged deprivations of his Fourth, Fifth, Sixth and Thirteenth Amendment rights be dismissed for failing to state a claim upon which relief may be granted.

### Conclusion

For the reasons explained above, I recommend that plaintiff's complaint (document no. 1) be dismissed for failing to state a claim upon which relief may be granted. See 28 U.S.C. § 1915A(b)(1); see also LR 4.3(d)(2)(A)(i). A dismissal based on this Report and Recommendation will count as a "strike" against plaintiff, pursuant to 28 U.S.C. § 1915(g).

Any objections to this report and recommendation must be filed within ten days of receipt of this notice. Failure to file an objection within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law

10

Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge


Date:   November 9, 1998

cc:     David B. Rowe, pro se

11